UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GILBER RICARDO BARRETO SANCHEZ,

Petitioner,

v.

WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER,

Respondent.

Case No. 1:26-cv-08728-KES-CDB (HC)

FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND TO ORDER PETITIONER'S IMMEDIATE RELEASE

(A Number: A-240-668-752)

(Doc. 1)

**7-Day Objection Period**

Petitioner Gilber Ricardo Barreto Sanchez ("Petitioner"), a federal immigration detainee proceeding pro se, initiated this action on October 23, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241, while in custody of Immigration and Customs Enforcement ("ICE") at the California City Immigration Processing Center. (Doc. 1).

**Relevant Background**

In his petition, Petitioner alleges that he is a native and citizen of Colombia and entered the United States of America on April 4, 2022. *Id.* at 12; *see* (Doc. 6 at 1) ("[Petitioner] … entered the United States unlawfully at or near the Del Rio-Ciudad Acuna International Bridge [in Texas] on April 2, 2022."); (Doc. 6-1 at 3, "Ex. A") (August 31, 2026, Form I-213 Record of Deportable/Inadmissible Alien). Petitioner was detained by immigration authorities and subsequently released and paroled "due to lack of bed space at the detention facility." Ex. A at 3.

Respondents acknowledge that Petitioner "has no known criminal history thus far." (Doc. 6 at 2); Ex. A at 3. Petitioner alleges that he supports and lives with his family, including two daughters, in Fort Lauderdale, Florida. (Doc. 1 at 14).

On August 30, 2026, Petitioner was arrested and detained "for [i]mmigration violations" by a Customs and Border Protection (CBP) agent following a call-sign '220' result showing "derogatory information on the registered owner of the vehicle" and the CBP agent's inquiry about Petitioner's citizenship and immigration status. Ex. A at 3. That same day, Petitioner was issued a notice of custody determination form wherein Petitioner refused to sign but requested a custody determination, a Notice to Appear (NTA), and an administrative warrant. Ex. A at 11-15.

Respondents timely filed a response to the petition in which they acknowledge that Petitioner's detention is governed by 8 U.S.C. § 1226(a). (Doc. 6 at 1). Respondents also acknowledge that Petitioner was arrested and subsequently issued an administrative arrest warrant and a NTA later that day. *Id.* at 2; Ex. A at 11-15. Respondents also proffer documents that Petitioner was provided two custody redetermination hearings, with the first held on September 24, 2026, wherein an immigration judge denied bond because Petitioner failed to "establish[] that he is a suitable bail risk based on illegal entry" and Petitioner "appears to have violated the [Alternatives to Detention (ATD)] program based on his failure to report as required[,]" and the second on October 19, 2026, where Petitioner faced the same result because he "has not established a material change in circumstances since [the] last bond denial[.]" *Id.*; Ex. A. at 7-10. ATD is a program that permits noncitizens "to remain in their communities — contributing to their families and community organizations and, as appropriate, concluding their affairs in the U.S. — as they move through immigration proceedings or prepare for departure."[1] Respondents argue that the "only relief warranted here is a bond hearing under Section 1226(a) … as [Petitioner] has yet to exhaust his administrative remedies." (Doc. 6 at 1). The second order denying bond indicates Petitioner's appeal of the order is due on November 18, 2026. Ex. A at 8.

///

[1] *See* https://www.ice.gov/features/atd (last visited Nov. 13, 2026).

**Discussion**

Respondents correctly concede that Petitioner's detention is governed by § 1226(a) and that he is entitled to a bond hearing under that statute. *See Rodriguez Vasquez v. Bostock,* 183 F.4th 1160, 1172 (9th Cir. 2026). However, given that Petitioner previously was released by immigration authorities, which necessarily required their determination that he did not then present a risk of flight or danger to the community (*see* 8 C.F.R. § 1236.1(c)(8)), Petitioner also retains a liberty interest in his freedom from detention that implicates protections under principles of due process. *See Padilla v. U.S. Immigration and Customs Enforcement*, -- F.4th --, 2026 WL 2822044, at *11 (9th Cir. Sept. 21, 2026) (noting "decades of precedent establishing that noncitizens within the United States, legally or not, generally are within the protections of the Fifth Amendment's Due Process Clause."); *e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting "the actions of the Government in allowing Petitioner to remain in the community for over five years strengthen Petitioner's liberty interest. Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause.") (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987)); *Ramazan M. v. Andrews*, No. 1:25-cv-01356-KES-SKO (HC), 2025 WL 3145562, at *5-6 (E.D. Cal. Nov. 10, 2025) ("Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute") (citing *inter alia Young v. Harper*, 520 U.S. 143, 147-49 (1997)).

Because Petitioner retains a liberty interest in his freedom from detention, the undersigned has considered the record evidence in the context of the due process framework set forth by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976). For the reasons that follow, pursuant to that framework, the undersigned concludes that Petitioner is entitled to a pre-deprivation bond hearing at which the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community, such that physical custody is legally justified.

First, Respondent either acknowledges or does not dispute Petitioner's allegations that he has lived in the United States for over four years, and during that time has not accumulated any criminal history and has remained gainfully employed while supporting his family of four.

Measured against the three-factor *Mathews* test, these unrebutted facts and circumstances strongly suggest that Petitioner is entitled to the highest degree of due process to protect against the risk of the government erroneously curtailing his liberty, even accounting for the government's strong interest in enforcing the immigration laws.

Second, there is nothing in the record to suggest that the government reasonably harbored an urgent need to arrest Petitioner without a pre-deprivation hearing. Indeed, Respondents acknowledge that Petitioner was arrested without prior issuance of an arrest warrant but make no argument that, under the circumstances of his encounter with immigration authorities, the arresting agents were permitted to conduct a warrantless arrest of Petitioner. The prevailing rule is that the government must provide a noncitizen with a pre-deprivation hearing. *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty …"). A narrow exception to this default rule exists where "it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." *See Martinez Hernandez v. Andrews*, No. 1:25-cv-01035-JLT-HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025) (citing cases); accord *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1035–37 (N.D. Cal. 2025); *O.A.C.C. v. Wofford*, No. 1:25-cv-01652-DAD-CSK (HC), 2025 WL 3485221, at *4-5 (E.D. Cal. Dec. 4, 2025). Here, considering Petitioner's lack of criminal history and the circumstances of his arrest—a traffic stop for unspecified reasons relating to undefined "derogatory information" during which a CBP agent determined Petitioner lacked immigration status—it is not objectively reasonable to conclude that requiring Petitioner to appear for a pre-deprivation hearing would have been impractical or otherwise incentivized his flight.

Third, Petitioner's release by immigration authorities upon their initial encounter with him approximately four years prior to his arrest necessarily required them to conclude that Petitioner was neither a flight risk nor a danger to the community (*see supra*). Under these circumstances, particularly given Respondent does not assert any violations of release or criminal history to support Petitioner's arrest, the government should bear the burden of establishing at a pre-deprivation

hearing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *E.g., Singh v. Andrews*, No. 1:25-cv-01543-DCJ-SCR, 2025 WL 3248059, at *6 (E.D. Cal. Nov. 19, 2025) (requiring government to carry burden by clear and convincing evidence, notwithstanding disputed issues of facts involving the petitioner's alleged violation of release conditions); *M.V.I. v. Andrews*, No. 1:25-cv-01440-JLT-SKO, 2025 WL 3154403, at *13-14 (E.D. Cal. Nov. 12, 2025) (same). "Doing so is logical" because "the immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *M.R.R. v. Chestnut*, No. 1:25-cv-01517-JLT-SKO, 2025 WL 3265446, at *14 (E.D. Cal. Nov. 24, 2025) (relying on *Pinchi v. Noem*, 792 F. Supp. 3d 1025, at 1034, 1038 (N.D. Cal. 2025)); accord *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111-13 (E.D. Cal. 2025).

Finally, Petitioner references in his petition that the immigration judge, in denying his request for bond, relied in part on Petitioner's undefined failure to report in compliance with the "ATD" [alternatives to detention] program, and alleges facts explaining that any such failure was the result of a malfunction of the ATD reporting telephone provided by immigration authorities to Petitioner. (Doc. 1 at 13); *see* (Doc.6-1 at 9, 9/24/26 Order of Immigration Judge). There is no record evidence the Petitioner violated terms of his release by immigration authorities aside from the immigration judge's cursory reference to it in his order. In opposing the petition, Respondent does not address this alleged fact, let alone argue that it supports denying Petitioner relief. Moreover, there is no record evidence permitting the drawing of any reasonable inference that the CBP officer who conducted a traffic stop of Petitioner was aware of this alleged fact. As such, it is immaterial to the undersigned's consideration of the *Mathews* factors and conclusion that the CBP officer was not permitted to conduct a warrantless arrest.

Accordingly, the undersigned will recommend that the petition for writ of habeas corpus be granted and that Respondent be ordered to immediately release Petitioner.

///

///

**Conclusion and Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (Doc. 1) be GRANTED.
2. Respondents be ORDERED to release Petitioner immediately.
3. Respondents be ENJOINED AND RESTRAINED from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.
4. Respondents be ORDERED to provide Petitioner with a copy of this Order upon his release.
5. The Clerk of the Court be DIRECTED to enter judgment in favor of Petitioner and close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondent, and the fact that the parties have briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require."). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

///

///

A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **November 16, 2026**

UNITED STATES MAGISTRATE JUDGE